AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

SEP 1 2 2018

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No.
: (1) Black, ZTE cellular telephone, Model Z982; (2) ) **18MJ4879**
White/Gold, Apple IPhone cellular telephone, Model )
A1723 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 952, and 960 | Importation of a Federally Controlled Substance - Methamphetamine |

The application is based on these facts:

Please see Affidavit of Special Agent Daniel Lundberg

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Daniel Lundberg, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/10/18

*Judge's signature*

City and state: San Diego, CA         Hon. Mitchell D. Dembin, US Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Daniel Lundberg, being duly sworn, hereby state as follows:

## BACKROUND AND EXPERIENCE

1.  I am a Special Agent employed by the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed as a Special Agent since December 2016. I attended and completed the Federal Law Enforcement Training Center Criminal Investigator Training Program, as well as the HSI Special Agent Training program. Before becoming a Special Agent, I was employed at the Dorchester County Sheriff's Office in South Carolina from February 2007 to December 2016. I started my career at the Sheriff's Office as a patrol deputy, before becoming a narcotics investigator. I was then promoted to the narcotics unit sergeant. In 2006, I received a bachelor's degree in Criminal Justice with a minor in Security Administration from Western Illinois University. During my career as a law enforcement officer, I have been responsible for investigating a number of different crimes including, but not limited to, property crimes, drug crimes, and sex crimes. I have arrested or assisted with the arrest in excess of eight-hundred (800) persons for drug-related offenses. I have interviewed or been present during the interview and evaluation of over nine-hundred (900) subjects who have been involved in the usage and/or sales of controlled substances or who have specific information relating to usage and/or sale of controlled substances. I have also assisted other street narcotic units within other municipal, state, and federal narcotics units with search and arrest warrants for drug related offenses. Based on my training and experience, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) utilized informants to purchase quantities of controlled substances; (3) acted in an undercover capacity to purchase quantities of controlled substances; (4) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (5)

1

participated in the execution of search warrants related to drug investigations; (6) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute; (7) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances; (8) participated in large scale highway interdiction activities. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers. Based upon my training and experience and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.
   b. Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.
   c. Drug smugglers, drug traffickers, and their accomplices will use cellular/mobile telephones because they easily may arrange and/or determine what time their illegal cargo will arrive at predetermined locations.
   d. Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.
   e. Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f. Drug smugglers, drug traffickers, and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.

## PURPOSE OF AFFIDAVIT

2. This affidavit supports an application for a warrant to search the following electronic devices: (1) Black, ZTE cellular telephone, Model Z982; (2) White/Gold, Apple IPhone cellular telephone, Model A1723 (collectively, "**Target Devices**"), more particularly described in Attachment A, incorporated herein.

3. Based on information below, I have probable cause to believe that in the property in paragraph 2, there is evidence of a crime, and evidence that the **Target Devices** are property designed for use, intended for use, or used in committing a crime. Specifically, I have probable cause to believe that within the above property is evidence of violations of 21 U.S.C. §§952 and 960, Importation of a Controlled Substance (Methamphetamine).

4. The evidence to be searched for and seized is described in attachment B, incorporated herein.

5. The following is based on my own investigation, and information gained through my collaboration and consultation with other agents and law enforcement personnel who are experienced in the area of drug smuggling. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I set forth only facts necessary to establish foundation for the requested warrant.

3

Conversations and discussions below are set forth in substance unless noted. Dates and times are approximate.

## PROBABLE CAUSE

6. On February 11, 2018, the **Target Devices** were seized as evidence by Customs and Border Protection (CBP) from Estevan CUEVAS Garcia was arrested for driving a 2005 Honda Civic into the United States through the Otay Mesa, California, Port of Entry ("OTM POE") with 26.14 kilograms of methamphetamine concealed within the vehicle's rear quarter panels. The **Target Devices** have remained in CBP possession since the date of CUEVAS arrest. On July 5, 2018, I removed the **Target Devices** from the CBP evidence vault and they are currently stored in a secure location at 880 Front St. Suite 3200, in San Diego, CA 92101 within the Homeland Security Investigations (HSI), Office of the Special Agent in Charge (SAC).

7. On February 11, 2018, at approximately 9:45 p.m., CBP Canine Enforcement Officer ("CEO") T. Pittman and his assigned Human and Narcotics Detection Dog ("HNDD") were conducting pre-primary roving operation at the Otay Mesa, California port of entry ("OTM POE"). The HNDD alerted and responded to the passenger quarter panel of a blue Honda Civic bearing California license plates, which was located in pre-primary lane #13. CEO Pittman then alerted assisting CBP Officers of the canine alert and turned the vehicle over to them.

8. CBP Officer Rodriguez, made contact with the driver of the Honda Civic, who was identified as Estevan CUEVAS Garcia. CUEVAS informed Officer Rodriguez that he was attempting to enter into the United States to go to San Ysidro, California. CUEVAS Garcia disclosed to Officer Rodriguez that he had owned the vehicle for approximately a month. Officer Rodriguez escorted CUEVAS to the security office. The vehicle was driven through the Z-PORTAL (X-ray machine) and anomalies were observed in both rear quarter panels by the Z-Portal operator, CBP Officer Veronica Morey.

9. CBP Officer J. Blumenthal was assigned to inspect the vehicle in the secondary lot. Officer Blumenthal conducted a 7-point inspection on the vehicle. During his inspection, he located a total of (50) five packages concealed within both rear quarter panels. Officer Blumenthal probed a random package, which revealed a clear crystalline substance. The clear crystalline substance field-tested presumptive for the properties and/or presence of methamphetamine. The total weight of the methamphetamine was approximately 26.14 kilograms (56.63 pounds). Officer Blumenthal subsequently processed and seized the methamphetamine, Honda Civic, CUEVAS Garcia's personal effects, and CUEVAS Garcia's cellphones, the **Target Devices**.

10. Homeland Security Investigations ("HIS") Special Agent ("SA") Nicholas Brown and I conducted a custodial interview with CUEVAS. I read CUEVAS his *Miranda* Rights in English, reading from a preprinted form, in the presence of SA Brown. Post *Miranda*, CUEVAS agreed to waive his constitutional rights and speak with us. During the custodial interview of CUEVAS, he confessed to knowingly and intentionally smuggling unknown items into the United States. CUEVAS stated that on February 10, 2018 he was introduced to a group of individuals by a family friend. These individuals, only known by aliases, offered CUEVAS approximately $4000 dollars to smuggle items into the United States. They took his vehicle and on February 11, 2018, contacted him and told him to come and pick up the vehicle, which was located in Tijuana, MX at a gas station near the OTM POE. CUEVAS was instructed to enter in the United States and upon doing so, would receive a telephone call with further instructions on where to go. CUEVAS informed SAs that these individuals contacted him multiple times leading up to him arriving at the OTM POE. CUEVAS was in possession of the **Target Devices** and claimed ownership. CUEVAS was placed under arrest for the violation of 21 U.S.C. §§ 952, and 960.

11. Based on my experience investigating drug smugglers and traffickers, there is probable cause to believe that CUEVAS Garcia used the **Target Devices** to

5

coordinate with coconspirators regarding the importation, transportation, and distribution of methamphetamine, and to otherwise further this objective both inside and outside of the United States. There is also probable cause to believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices**, which may identify other persons involved in drug trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of CUEVAS, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information may be stored in the memory of the **Target Devices**.

## METHODOLOGY

12. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the

device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

13. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

14. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

//
//
//
//
//
//
//
//
//
//

7

**CONCLUSION**

15. WHEREFORE, I request that the court issue a search warrant for the property in paragraph 2 to seize the evidence in attachment B.

_____
Daniel Lundberg
Special Agent

Subscribed and sworn to before me this __10__ day of September, 2018.

_____
The Honorable Mitchell D. Dembin
United States Magistrate Judge

8

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property, described as **Target Devices** in the accompanying Affidavit, is to be searched:

1. Black, ZTE cellular telephone, Model Z982, Serial No. 329776780382, IMEI: 864650038379688;
2. White/Gold, Apple Iphone cellular telephone, Model A1723, IMEI: 355440075872563.

**Target Devices** are currently in the possession of Homeland Security Investigations, Office of the Special Agent in Charge (HSI SAC), 880 Front St. Suite 3200, San Diego, CA 92101.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of 21 U.S.C. §§ 952 and 960:

Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;

b. tending to identify other facilities, storage devices, or services—such as email addresses, IP addresses, phone numbers—that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.